IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 08-36-JJF |
| MICHAEL D. KING, | : |
| Defendant. | : |

**MEMORANDUM IN RESPONSE TO DEFENDANT'S PRETRIAL MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

On the evening of February 12, 2008, members of the Wilmington Police Department ("WPD") responded to a 911 call regarding a man threatening the caller with a gun. Once WPD responded to the scene, the Bethel Villa Apartments located at 401 North Pine Street in Wilmington, the victim directed the officers to an upstairs apartment where the man with the gun was believed to be located. The apartment in question is leased by Ms. Ressa Cottingham. Ms. Cottingham allowed the WPD officers to enter the apartment and informed them that Defendant Michael D. King ("Defendant" or "King") was in one of the apartment's bedrooms. Following a pat down, during which a bag of marijuana was found in Defendant King's coat pocket, King was placed under arrest by WPD and taken to a patrol car outside of the apartment building. Thereafter, Ms. Cottingham consented to a search of her apartment. The ensuing search revealed a silver Smith and Wesson .44 magnum, which the victim later identified as the gun which Defendant King used to threaten her. King later gave a post-Miranda recorded statement to WPD officers with regard to his possession of the firearm.

In his pretrial motion to suppress evidence and statements (the "Motion") (D.I. 13), Defendant asserts that the officers lacked valid consent to search Ms. Cottingham's apartment.

(Mot. ¶ 13). Accordingly, Defendant contends that all evidence seized at that location, as well as all statements he gave to law enforcement after his arrest, should be suppressed. (Id. ¶ 14).

Defendant's Motion should be denied for several reasons. First, Defendant has not established the necessary expectation of privacy in Ms. Cottingham's apartment to assert that the search of the apartment was illegal. Even if Defendant King had the necessary expectation of privacy, however, that fact would have no bearing on Ms. Cottingham's right to consent to a search of *her* apartment. The testimony of two Wilmington Police officers at the evidentiary hearing established that Ms. Cottingham freely permitted the officers to enter her apartment and consented to a search without objection after a consent form was read to her. Additionally, to the extent that Defendant is asserting that Ms. Cottingham's consent was under duress or the result of coercion, he does not have standing to make such an argument, as only Ms. Cottingham has standing to argue that the consent she provided was under duress or a result of coercion. Lastly, any comments made by Defendant King regarding the need for a search warrant directed at Ms. Cottingham as he was being taken away by the police do not rise to the level of an express refusal of consent by a physically present resident of a shared dwelling under the Supreme Court's ruling in Georgia v. Randolph, 547 U.S. 103 (2006). Therefore, the government respectfully asserts that Defendant's motion should be denied.

## FACTUAL BACKGROUND

On February 12, 2008 WPD Officers Matthew Kucharski and David Hamerick responded to the Bethel Villa Apartments ("Bethel Villa") at 401 North Pine Street in Wilmington, Delaware following a 911 call made by a Bethel Villa resident reporting that she

2

was being threatened with a gun. (Tr. at 4, 17).[1] Upon their arrival, the officers first met with the victim. (Id. at 5). The victim explained that she encountered Defendant King in the hallway of her apartment smoking marijuana (Id.). During a verbal altercation, Defendant King told the victim "mind your own business before I kill you." (Id.). After the victim went to her apartment and locked the door, Defendant King knocked on the door causing the victim to open the door a small amount with the chain lock still secured. (Id.). The victim then explained to the officers that Defendant King told her "you're going to die," and that he raised a large silver handgun up to the door. (Id.).

The victim then told the officers that she witnessed Defendant King run upstairs to Apartment C1. (Id. at 6). Officers Kucharski and Hamrick proceeded to Apartment C1 where they knocked on the door and were greeted by Ressa Cottingham, Defendant King's girlfriend. (Id.). The victim followed the officers upstairs and stayed in the hallway while the officers sought entry into Ms. Cottingham's apartment. (Id. at 8). Ms. Cottingham allowed the officers to enter the apartment and also confirmed that she lived in and was the leaseholder of the apartment. (Id. at 6-7; 18). Once inside, the officers established that Defendant King was in the apartment. (Id. at 7). The officers instructed Ms. Cottingham to call for King to come out of the bedroom where he was located at the time of the officers' arrival. (Id.).

As Defendant King came out of the bedroom, the victim, who was able to see into the apartment from the outside hallway through an open door, identified Defendant King as the man who threatened her with the gun. (Id. at 8). In the interest of safety of the officers and the others in the room, Officer Kucharski then patted down King and another gentleman who was in the apartment. (Id. at 8, 15). During the pat down of King, Officer Kucharski felt what he believed

---

[1] All references to "Tr." refer to the transcript of the June 4, 2008 hearing on Defendant's Motion, D.I. 15.

3

to be a bag of illegal narcotics in King's right front jacket pocket. (Id. at 8). This belief was based on the feel of a plastic sandwich bag with a hard knot at the end of it, which Officer Kucharski's training and experience has taught him to be an indicator of illegal narcotics. (Id. at 9). Officer Kucharski asked Defendant King what was in his pocket, to which King responded, "I don't know, check." (Id.). The bag was found to contain marijuana and Defendant King was placed under arrest for possession of marijuana. (Id.).

Defendant King was then taken by Officer Kucharski outside to the WPD patrol car. (Id.). Both Officer Kucharski and Officer Hamrick testified that Defendant King, after being placed under arrest, and as he was being taken to the patrol car, was heard saying to Ms. Cottingham to not let the officers search the apartment without a warrant. (Id. at 10, 19). The officers had not discussed a desire to search the apartment with anyone prior to Defendant King's statement. (Id. at 20).

While Officer Kucharski remained with Defendant King outside of the apartment building, Officer Hamrick endeavored to obtain Ms. Cottingham's consent to search the apartment. Officer Hamrick testified that prior to receiving consent, he reviewed a Wilmington Department of Police Consent to Search form with Ms. Cottingham and in fact read the entire document to her. (Id. at 21). According to Officer Hamrick, Ms. Cottingham did not object to signing the document, nor was she threatened with any potential negative ramifications if she chose not to sign the document. (Id.). The consent form was signed by Ms. Cottingham, Officer Hamrick, and Officer Santana of WPD, who arrived at the scene subsequent to Officers Kucharski and Hamrick, and is dated February 12, 2008 at 11:31 p.m. (Govt. Ex. 1). The consent form acknowledges that Ms. Cottingham had the right to refuse the police to search her property,

that she in fact waived this right of refusal, and that her written permission to search the property was given "without threat, promises or inducements of any kind."(Id.).

Following receipt of Ms. Cottingham's written consent, Officer Hamrick proceeded to search the bedroom where Defendant King was located when the officers arrived at the apartment. There were no indications that this room belonged specifically to Defendant King. (Tr. at 22). Officer Hamrick first located a small black, paintball gun in a box within the bedroom closet. (Id. at 23). While continuing to search the closet, Officer Hamrick found a silver revolver. (Id.). The revolver was then shown to the victim, who continued to wait outside of the apartment. (Id. at 23-24). The victim identified the silver revolver as the same gun Defendant King had previously stuck through her apartment door when he threatened to kill her. (Id. at 23).

## LEGAL ARGUMENT

The government respectfully asserts that Defendant's Motion should be denied. The search of Apartment C1 at Bethel Villa was carried out only after receiving the written consent of the apartment's leaseholder. Defendant has failed to establish the necessary expectation of privacy, a burden which he must meet, in order to allege an illegal search of the apartment. Moreover, regardless of any expectation of privacy Defendant has attempted to prove, Defendant King does not have standing to assert a claim that Ms. Cottingham was unduly coerced into signing the consent form. Finally, any statements made by Defendant King as he was being led to the WPD patrol car, but before any officer expressed an interest in searching the apartment, are inconsequential to the validity of the search.

### A. Defendant Does Not Have The Necessary Expectation Of Privacy To Assert An Illegal Search Argument

"Because Fourth Amendment rights are 'personal,' the central inquiry in any suppression hearing is whether the defendant challenging the admission of evidence has shown a legitimate expectation of privacy in the place searched or the thing seized." Rakas v. Illinois, 439 U.S. 128, 140 (1978). To establish standing, a defendant has the burden of demonstrating that he had a reasonable expectation of privacy in the property searched. See Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980).

The government acknowledges that a co-resident of a shared dwelling and even an overnight guest of a dwelling are typically held to have a reasonable expectation of privacy in that dwelling. See U.S. v. Villegas, 495 F.3d 761, 772 (7th Cir. 2007); Minnesota v. Olson, 495 U.S. 91, 110 (1990). Here, Defendant King has not met his burden by successfully establishing that he was a co-resident or an overnight guest of Apartment C1, however.

Defendant appears to rely on the testimony of Nicholas Riley and a portion of King's previously recorded interview with WPD to prove that Defendant King "lives" in Apartment C1. (Tr. at 30-31, 36). This testimony was rebutted by Detective David Rosenblum and his recorded interview with Ms. Cottingham. (Id. at 33). During the interview, Ms. Cottingham stated that King "only stays [at the apartment] from time to time." (Id.; Govt. Ex. 3 at 2:00-2:08). Moreover, there is no evidence that King was a lessee of the apartment, nor did Defendant attempt to establish that he was an overnight guest of Ms. Cottingham's on the night in question.

As the Court recognized at the evidentiary hearing, Mr. Riley's testimony carries less weight than prior statements or testimony that could have been provided by Ms. Cottingham at

the hearing.[2] Defendant's counsel represented to the Court that Ms. Cottingham was instructed by her counsel not to speak about this case due to a pending eviction proceeding. (Tr. at 53-54). The lack of testimony from Ms. Cottingham, beyond her previously recorded interview, is nevertheless telling.[3] The limited and rebutted evidence supporting Defendant King's position that he had a reasonable expectation of privacy in Apartment C1 is not sufficient to meet Defendant's burden. See Minnesota v. Carter, 525 U.S. 83, 90 (1998) ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not.").

B.   **Written Consent To Search Was Properly Obtained**

Assuming *arguendo* that Defendant King did have a reasonable expectation of privacy in Apartment C1, the evidence presented still demonstrates that another individual who had an expectation of privacy in the apartment provided WPD with consent to search the residence. "Voluntary consent to a police search, given by the individual under investigation or by a third party with authority over the subject property, is a well-established exception to the warrant requirement." U.S. v. Rith, 164 F.3d 1323, 1328 (10th Cir. 1999). "A third party has actual authority to consent to a search 'if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes.'" Id. at 1329.

Ressa Cottingham provided consent to have her apartment searched upon signing the WPD consent form, which was read to her by Officer Hamrick. Where an individual reads, understands, and signs a consent form, a warrantless search is not in violation of that individual

---

[2] Referring to Mr. Riley's testimony, the Court noted, "He's only here because you can't get [Ms. Cottingham]."(Tr. at 54). Additionally, Riley admitted to being a friend of Defendant King for over five years, which also raises questions as to his bias. (Id. at 36).

[3] As the Court explained, Ms. Cottingham will undoubtedly testify in any state court eviction action "that Mr. King had nothing to do with her apartment." (Tr. at 53).

Fourth Amendment rights. U.S. v. Kabiarets, 496 F.Supp.2d 394, 403 (D. Del. 2007). Additionally, Officer Hamrick testified that Ms. Cottingham did not object to signing the consent form, nor was she threatened or induced to sign the document in any way.[4] (Tr. at 21).

### 1. Defendant does not have standing to contest the validity of the consent.

Even if there were compelling evidence that Ms. Cottingham was unduly pressured into signing the consent form, such allegations would not be germane to a suppression motion brought by Defendant King. Since Defendant King was not the individual who was allegedly forced to sign the consent form, he does not have standing to raise allegations of duress or coercion related to the consent search. U. S. v. Salvucci, 448 U.S. 83, 85 (U.S. 1980) ("defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated"); U.S. v. Price, 54 F.3d 342, 345 (7th Cir. 1995) ("To the extent this appeal presents a legitimate challenge to [a third party's] consent (on which we shall say more), that challenge belongs to [the third party].").

Ms. Cottingham is the only individual who has standing to bring a claim of coercion regarding the consent she provided. She has not brought such a claim and has not testified to corroborate the testimony Defendant's witnesses.

### 2. Defendant's statements following his arrest have no effect on the valid consent to the search.

Both Officer Kucharski and Officer Hamrick testified that Defendant King, after being placed under arrest, said to Ms. Cottingham to not let the officers search the apartment without a

---

[4] The testimony from Mr. Riley that the WPD officers threatened to take away Ms. Cottingham's children if she did not sign the consent form is not only contradicted by Officer Hamrick's testimony, but also is brought into question by Mr. Riley's testimony that Defendant King and Officer Kucharski were in the apartment as the discussion regarding the consent search was occurring – a fact disputed by Officer Kucharski's testimony that he had taken Defendant out of the apartment immediately upon his arrest for possession of marijuana. (Tr. at 9, 15, 40).

warrant. (Tr. at 10; 19).[5] While in certain circumstances an objection to a search by one resident of a shared dwelling will render the consent to search by another resident invalid, the facts of this case do not meet the specific requirements necessary for such a finding.

The Supreme Court has recently ruled that "a warrantless search of a shared dwelling for evidence *over the express refusal of consent by a physically present resident* cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Randolph, 547 U.S. at 120 (emphasis added). In Randolph, police received a complaint by the defendant's wife that the defendant had taken their son away. Id. at 107. Upon arriving at the residence, the officers were informed by the defendant's wife that her husband was a cocaine user. Id. Shortly after the police had arrived, the defendant returned and denied cocaine use. Id. The defendant's wife then volunteered that there were items of drug evidence in the house. Id. While both defendant and his wife were speaking with the officers, the defendant was asked for permission to search the house, which he refused to give. Id. The officer then turned to his wife for consent to search, and she consented. Id.

While the Court in Randolph ruled that the wife's consent was not sufficient in the face of defendant's refusal to search the home, the scope of this ruling was limited. The Court went on to explain "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." Id. at 121. Indeed, notwithstanding his various standing issues, Defendant King is exactly the sort of individual the Court contemplated "losing out" on a claim for invalid consent.

---

[5] Defendant's counsel suggested at the hearing that she was not made aware of King's statements in discovery. (Tr. at 50). A recorded interview with the victim in this case was provided in discovery. During that interview, the victim states that she witnessed Defendant King stating "get a search warrant" as he was being led out of the apartment.

Officers Kucharski and Hamrick both testified that Defendant King was not in the apartment when discussions with Ms. Cottingham regarding consent took place. (Tr. at 15, 20). Therefore, in the words of the Supreme Court, Defendant King did not "take part in the threshold colloquy." Randolph at 121. Further, any statements Defendant King made prior to Officer Hamrick's exchange with Ms. Cottingham were not in response to a request for consent to search the apartment and were not even directed towards the officers. (Tr. at 10, 19). Rather than clearly conflicting responses to a simultaneous request to search a shared dwelling, as seen in Randolph, the facts presented here indicate Defendant King was not asked for consent to search and merely provided instructions to Ms. Cottingham, which she freely chose not to follow.

## CONCLUSION

**WHEREFORE,** the United States respectfully requests that the Court deny Defendant's Pre-Trial Motion to Suppress Evidence and Statements.

>
> Respectfully submitted,
>
> COLM F. CONNOLLY
> UNITED STATES ATTORNEY
>
> BY: *[signature]*
> Geoffrey G. Grivner
> Special Assistant United States Attorney

Dated: June 20, 2008